**UNITED STATES of America,**
**Plaintiff,**

v.

**Lynette Alice FROMME, Defendant.**

**Crim. No. S–75–451.**

United States District Court,
E. D. California.

Oct. 24, 1975.

Dwayne Keyes, U. S. Atty., Donald H. Heller, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

John E. Virga, Sacramento, Cal., for defendant.

## OPINION

MacBRIDE, Chief Judge.

On the morning of September 5, 1975, Gerald R. Ford, President of the United States, departed the Senator Hotel in downtown Sacramento and commenced a short walk across Capitol Park to the State Capitol for a scheduled meeting with the Governor of California. As he walked through the park, the President was greeted by numerous citizens and paused occasionally to shake hands. During one such handshaking stop, a woman in a red dress, who had been previously observed by the President standing next to a tree and who was visible to the President above her chest, suddenly moved her right hand forward toward the President through the crowd at about waist level. The President observed that she was holding a hand gun and that she was about two feet distant from the President. The gun, a .45 caliber pistol, did not fire.[1] Agents of the Secret Service and local law enforcement officers immediately wrestled the woman to the ground while other agents quickly moved the President from the scene of the incident.

As a result of her conduct, Lynette Alice Fromme was arrested and indicted in this court for the crime of attempted assassination of the President of the United States in violation of Title 18 U.S.C. § 1751(c).

The issue presently before the court is a request by defendant Fromme to subpoena President Ford as a witness for the defense. As an initial matter, it must be noted that defendant, being an indigent, has no *absolute* right to subpoena any and all witnesses for the defense. F.R.Cr.P. 17(a). Since it will be necessary for the Government to incur the expense of witnesses, the provisions of F.R.Cr.P. 17(b) are applicable:

"(b) Defendants Unable to Pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant *upon a satisfactory showing* that the defendant is financially unable to pay the fees of the witness and *that the presence of the witness is necessary to an adequate defense.* . . ." (emphasis added)

In accord with the constitutional mandate of the Sixth Amendment, the courts have displayed a liberal attitude in application of F.R.Cr.P. 17(b). *Greenwell v.*

---

1. The search warrant and complaint on file herein allege that although there was no bullet in the chamber of the gun, its magazine contained live bullets.

*United States*, 115 U.S.App.D.C. 44, 317 F.2d 108, 110 (1963); *Welsh v. United States*, 404 F.2d 414 (5th Cir. 1968); *United States v. Hathcock*, 441 F.2d 197 (5th Cir. 1971). As the court noted in *United States v. Romano*, 482 F.2d 1183, 1195 (5th Cir. 1973):

"If the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous."

In the instant case, the defendant has averred that if the President were called to testify, he would say that he neither heard a "click" of the weapon, nor did he hear the defendant say any words. Whether the weapon "clicked" or not is relevant to the issue whether the defendant pulled the trigger and would assist the defendant in meeting evidence the Government claims it can offer to the effect that a click was heard by a witness. Whether the President heard defendant utter any words is relevant to counter the testimony of other witnesses who are quoted in the indictment as hearing the defendant say words such as: "It didn't go off. Would you believe it. It didn't go off." and "He's not a public servant. Why are you protecting him?"

During oral argument on this matter, defendant contended that a major issue in this case would be the question of intent: Did defendant *intend* to assassinate the President or did defendant, who purports to be an ecological advocate, do the alleged act with no intent to kill the President but only for the purpose of gaining publicity for her environmental causes. On the question of intent, the testimony of the President, as averred, would be most relevant. Further, the testimony of the President would have a rather high probative value as he was perhaps the most percipient of all witnesses to the alleged crime. For example, the President, in addition to the testimony indicated above, could likely testify as to the facial expression and demeanor of the accused at the critical moment. A jury could easily draw inferences on the question of intent from such testimony.

In fact, the testimony of the President is more than merely "averred" testimony. During oral argument, the Government presented an affidavit by the President wherein, *inter alia*, he attests that he has "no recollection" of either hearing a "click," or of hearing the defendant utter any words. Such testimony is obviously both relevant and necessary to an adequate defense. Clearly, on the basis of this affidavit, defendant has met her burden under F.R.Cr.P. 17(b).

█ Obviously, by the introduction of the President's affidavit, the Government has not sought to show that the averred testimony is either untrue or frivolous. The Government has argued, however, that this court should exercise its discretion and not issue the subpoena on the ground that the witness sought would present merely cumulative evidence.

It is true that a district court has discretion, and broad discretion, to deny the issuance of a subpoena on behalf of an indigent defendant where that subpoena would bring to the court a witness whose testimony is merely cumulative. *Wagner v. United States*, 416 F.2d 558 (9th Cir. 1969); *United States v. Chapman*, 455 F.2d 746 (5th Cir. 1972); *United States v. Rosa*, 493 F.2d 1191 (2d Cir. 1974). This court has carefully reviewed *in camera* the names and averred testimony of the other defense witnesses and determines that the testimony of the President in this case should not be denied on the basis of being cumulative. The Government has argued, however, that some of its witnesses may testify in a similar manner as the President. In the first place, the cases which consider judicial discretion to reject witnesses whose testimony is cumulative have considered the question only with regard to the witnesses sought by the defense, and

not with regard to Government witnesses who might testify similarly as defense witnesses. Secondly, and more importantly, the testimony of the President, as noted, is unique due to his proximity to the defendant and the gun. The Government has not indicated that any other witness who was as close to the pistol and the defendant would testify in a manner similar to the President.

■ No consideration of "Executive Privilege" enters the equation at this stage of the proceedings. As Chief Justice Marshall noted in the case of *United States v. Burr*, 25 Fed.Cas. No. 14,692d, p. 30 (1807) and as cited in *Nixon v. Sirica*, 159 U.S.App.D.C. 58, 487 F.2d 700 (1973):

> "Whatever difference may exist with respect to the power to compel the same obedience to the process, as if it had been directed to a private citizen, there exists no difference with respect to the right to obtain it . . . .
>
> The guard, furnished to this high officer, to protect him from being harassed by vexatious and unnecessary subpoenas, is to be looked for in the conduct of a court after those subpoenas have issued; not in any circumstance which is to precede their being issued."

2. Although research has revealed no *case* law regarding the issuance of a subpoena to an incumbent President to be a witness in a criminal trial, historical research by Professor Ronald D. Rotunda in his excellent article "Presidents and Ex-Presidents as Witnesses: A Brief Historical Footnote," University of Illinois Law Forum (1975) describes two unreported, and little known instances which are of interest to this case:

During the presidency of Ulysses S. Grant, the Secretary of the Treasury, Benjamin Bstow, uncovered extensive distillery rings which had been defrauding the federal government of money. Two of Grant's closest friends, General John McDonald and General Orville E. Babcock, were indicted as a result of these disclosures. President Grant was determined to aid Babcock and announced at a cabinet meeting that he planned to go to St. Louis to testify at Babcock's trial. Dissuaded of this plan, he gave a three hour deposition attended by the Chief Justice, the Attorney General, and the Treasury Secretary. Grant testified that Babcock never talked to him about the fraud and

In *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court made a clear pronouncement that the claim of "Executive Privilege" is not absolute, and the extent, if any, of the privilege is a decision ultimately for the court.

Although the *Burr, Sirica*, and *Nixon* cases cited above, all dealt with the acquisition of presidential documents or other tangible evidence, the reasoning in those cases is even more pertinent in the instant case. Those cases hold that no person, even a President, is above the law and that in appropriate judicial proceedings, documents and other tangible evidence within the very office of the President may be obtained for use in those judicial proceedings. Similarly, where the President himself is a percipient witness to an alleged criminal act, the President must be amenable to subpoena as any other person would be.

This court is fully mindful that there exists no particular precedent for the issuance of a subpoena to an incumbent President to be a witness in a criminal trial.[2] By the same token, however, there is no precedent of a President being a percipient witness to a crime, particularly a crime perpetrated against the person of the President.

that he knew of nothing connecting Babcock with the fraud. Babcock was acquitted. It should be noted that Grant was not served with a subpoena, did not attend the trial, and gave his deposition voluntarily.

In what Professor Rotunda describes as a "virtually unknown case," President James Monroe received a subpoena to testify at the court-martial of Dr. William C. Barton. On two occasions, Dr. Barton had asked President Monroe for a position at the Philadelphia naval hospital. Barton eventually received this appointment, leading one Dr. Thomas Harris, whom Barton replaced, to bring charges of "intrigue and misconduct" against Barton. Because Barton's meetings with the President were cited as contributing factors in the accusation, a summons was issued to the President. President Monroe never did testify at the trial, but rather, submitted answers to interrogatories forwarded by the court. As noted by Professor Rotunda: "This procedure was apparently satisfactory to all parties, though his answers did not arrive until after the court had already dismissed the case."

Notwithstanding the burden which is imposed on the person of the President if he is called to testify as a witness in a criminal trial, this court has an even heavier burden to ensure a fair and a speedy trial to the accused, with total regard for all the rights and protections afforded an accused under the law of this land. In this respect, the words of the Supreme Court in *United States v. Nixon, supra,* 418 U.S. at 712, 94 S.Ct. at 3110, 41 L.Ed.2d at 1066 ring especially true:

> "[T]he allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts."

The court has determined that the subpoena should issue on the facts of this case. In recognition of the high office of the President and being mindful of the inconvenience and burden the subpoena will impose upon him, the court will not require the President to come to court to present his testimony, but rather, will "bring" the court to the President.

F.R.Cr.P. 15 permits the taking of depositions of witnesses in criminal cases. It is appropriate in the instant case to take a deposition of the President, on video tape, at a place and time of his choosing on or before October 31, 1975. At such a deposition, attorneys for the Government will be present as will the co-counsel for defendant. Examination and cross-examination will be conducted and the responses and demeanor of the witness will be preserved for the jury. To facilitate the hearing and to assure that the trial of this matter may commence on November 4, 1975, as presently scheduled, a United States District Judge will preside at the taking of the deposition.

Research reveals no precedent for the taking of a video tape deposition of a President in a criminal case pursuant to F.R.Cr.P. 15, however, this is a case without precedent. It is felt, nonetheless, that such a procedure will fully protect the accused's rights under the Sixth Amendment of the United States Constitution while at the same time imposing the least onerous burden on the person and the office of the President of the United States.

It is therefore ordered that a subpoena shall issue consistent with this opinion.