**In re Application of AMERICAN BROADCASTING COMPANIES, INC., Cable News Network, Inc., CBS, Inc., and National Broadcasting Company, Inc.**

**Misc. No. 82–0079.**

United States District Court,
District of Columbia.

April 30, 1982.

---

Nathan Lewin, Jonathan B. Sallet, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for Jodie Foster.

Floyd Abrams, Donald J. Mulvihill, Melanie C. Lawson, Cahill, Gordon & Reindel, New York City, for Communications Network.

## MEMORANDUM ORDER

BARRINGTON D. PARKER, District Judge:

This case presents the question whether the public has a common law right to copy

and broadcast either a witness' videotaped deposition or a tape recorded telephone conversation between the witness and a criminal defendant. The background events which provoke the question may be briefly stated.

On March 24, 1982, counsel for John W. Hinckley, Jr., the defendant in *United States v. John W. Hinckley, Jr.*, 529 F.Supp. 520,[1] moved to take a videotaped deposition of a witness, Jodie Foster, under Rule 15, Fed.R.Crim.P. The defendant's counsel represented that the witness would be out of the country from March 30, 1982, until an uncertain date in May and might, be unavailable to testify in person at the trial of their client which was scheduled to commence on April 27, 1982. Miss Foster's testimony was sought as that of a prospective witness to be preserved for use at trial. The motion was granted and on March 29 and 30, the witness' deposition was secured. The videotape and the transcript of her deposition have remained under seal and will not be made public until the appropriate point in the Hinckley trial.[2]

On April 20, 1982, Miss Foster's counsel applied for an order implementing procedures to maintain this Court's exclusive custody of her videotaped deposition.[3] Her counsel requested that the videotape not be marked as an exhibit or formally submitted into evidence. They also requested that after the tape was played for the jurors, that it be retained within the Court's exclusive custody and not be available as part of the public record for broadcast or copying by the public.

Neither party to the Hinckley proceeding objected. However, on April 23, 1982, four communications networks—American Broadcasting Companies, Inc., Cable News Network, Inc., CBS Inc., and the National Broadcasting Company, Inc.—applied for permission to copy the videotapes for public broadcast. A hearing was held on the issue on April 26 and, at that time, counsel for Miss Foster also moved that two tape recorded telephone conversations with defendant Hinckley, which were offered into evidence during the taking of her deposition, not be made available to the public for copying or broadcast.

The Court has considered the arguments of counsel, their memoranda of points and authorities and determines that Miss Foster's motion should be granted as to her videotaped deposition but denied as to the tape recorded conversations with Hinckley. The reasons in support of this ruling are provided below.

### A.

 The starting point for the analysis is the common law right to inspect and copy judicial records, including exhibits. Neither party contests the existence of that right, which is well-established in the case law. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). The parties differ, however, as to whether a witness' videotaped deposition is encompassed by that right.[4]

The broadcasters rely on several recent decisions dealing with the common law doctrine.[5] In *United States v. Mitchell*, 551

---

1. Hinckley is charged in a multi-count indictment with attempted assassination of the President of the United States, 18 U.S.C. § 1751(c), assault on a federal officer, 18 U.S.C. § 111, use of a firearm in commission of a federal offense, 18 U.S.C. § 924(c), and ten District of Columbia Code offenses.

2. On April 22, 1982, the Court entered an order admitting into evidence various portions of the deposition transcript.

3. The motion was originally filed under seal. However, on April 23, 1982, the Court released the memorandum, after two sentences were redacted.

4. Although the right was first recognized at a time when records were documentary in nature, it is now settled that the right extends to records which are not in written form, for example, videotapes. *In Re Application of National Broadcasting Co., Inc.*, 653 F.2d 609, 612 (D.C. Cir. 1981).

5. The broadcasters do not base their request on any constitutional right, a claim which would clearly be precluded by *Nixon v. Warner Communications*, 435 U.S. at 608–10, 98 S.Ct. at 1317–18.

F.2d 1252 (D.C. Cir. 1976), *reversed on other grounds sub nom., Nixon v. Warner Communications, supra,*[6] the court held that the public had a right to inspect and copy the Watergate tapes. In *United States v. Myers,* 635 F.2d 942 (2d Cir. 1980), *In Re Application of National Broadcasting Co., Inc.,* 653 F.2d 609 (D.C. Cir. 1981), and *United States v. Criden,* 648 F.2d 814 (3d Cir. 1981), the courts held that the same common law right permitted broadcasters to copy the Abscam tapes.

Miss Foster distinguishes these cases on several grounds. She first notes that the Watergate and Abscam tapes constituted real evidence of the activities of a criminal defendant. Miss Foster's videotape, on the other hand, only portrays a deposition and is, therefore, mere testimonial evidence, a description by a witness of events within her knowledge. She further notes that unlike the persons whose voices or actions were recorded on the Watergate and Abscam tapes, she is not accused of nor indicted for any criminal wrongdoing. She is, in fact, an "innocent victim of the defendant John W. Hinckley."[7]

■ Counsel for Miss Foster argue persuasively that the first distinction is of fundamental importance in this matter. To this Court's knowledge, no case authority has addressed the question whether the common law right of access to judicial records includes a right to copy videotaped testimony. But it is logical that Miss Foster's taped testimony should be treated in the same fashion as is the testimony of any live witness at trial—namely, the testimony is displayed to the jury, which can hear and view it but not record it. The common law right of access has never been held to include the right to televise,[8] photograph, or make aural recordings of trial testimony. *See Nixon v. Warner Communications, supra.* Nor has the public ever been permitted to copy the sound recordings which are frequently made by court reporters to supplement their stenographic notes of trial proceedings pursuant to 28 U.S.C. § 753(b). Indeed, a number of local court rules specifically bar the copying of a court reporter's tapes.[9] The analogy between the Foster videotape and a reporter's tape recording is far closer than is the analogy between the videotape and the Watergate or Abscam recordings.

■ If the networks' position were adopted, the testimony of a Rule 15 deponent, alone among witnesses at a trial, could be copied and broadcast. Nothing in any of the mentioned opinions dealing with the common law right of access to judicial records requires such exceptional treatment of a Rule 15 deponent.[10] Thus, this Court

6. The Supreme Court's reversal of the judgment of the Court of Appeals was based upon a factor unique to the case—namely, the existence of a special Act of Congress, the Presidential Recordings and Materials Preservation Act, 88 Stat. 1695, 44 U.S.C. § 2107 note, which established procedures for the dissemination of the Watergate tapes to the public.

7. Miss Foster testified that she had no knowledge of ever having seen Hinckley until the taking of the deposition and that her involvement with him was entirely involuntary.

8. Although it is proscribed under Canon 3A(7) of the Code of Judicial Conduct and under Local Rule 1-27, the televising of a trial is not inherently a denial of due process. *Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981). However, one rationale for prohibiting television cameras in the courtroom, namely, the possibility that trial participants might change their behavior before the cam-

eras, is applicable to this situation as well as to a trial.

9. See Memorandum of Law in Support of Motion of Jodie Foster at 7 n.3, citing court rules from various jurisdictions.

10. In fact, in this Court's view, adoption of the broadcasters' position might contravene Rule 15. There is no question but that showing videotaped testimony of an unavailable witness at a trial is superior to reading a deposition transcript. As one study concluded: "The presentation of verbal testimony as well as the aural and visual indicants of demeanor and credibility provide the trier of fact with a more representative information base from which to evaluate witness testimony." Zimmerman, *Overcoming Future Shock,* 1980 Duke L.J. 641, 665. Rule 15, quite sensibly, permits a videotaped recording of a deponent's testimony. However, if, in so doing, the Rule also permits the copying and broadcast of the testimony,

concludes that the videotape recording is not encompassed by the common law right of access to judicial records and the broadcasters, therefore, have no right to copy and broadcast the recording.[11]

■■■ Even if the public were entitled to copy and broadcast the videotaped testimony of a Rule 15 deponent, that right is not, under the common law doctrine, absolute.[12] The question of access is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications*, 435 U.S. at 599, 98 S.Ct. at 1312. The exercise of that discretion summons consideration of the second distinction between this case and those relied upon by the broadcasters—namely, the fact that Miss Foster is not a defendant but a witness who was unwittingly ensnared in a third party's alleged attempt to assassinate an American President. Under such circumstances, this Court is particularly concerned with her right to privacy and with her personal safety.[13] In fact, the interest in avoiding injury to such a person is "the most significant interest ... which weighs against the broadcasters' application." *In Re Application of National Broadcasting Co., Inc.*, 653 F.2d at 620.[14]

Miss Foster contends that the broadcast of her deposition will jeopardize her personal security. The contention is not without factual support. Her counsel has filed as an exhibit a copy of an indictment (Crim. No. 81–26, D.Conn.) in which an individual was charged with threatening the life of President Reagan. The indictment also charges that the defendant in that case stated that "your death is also required. You too will suffer the same fate as Reagan." An attachment to the exhibit recites that the letter was delivered and the death threat was made to Jodie Foster.

■■■ It is, of course, impossible to gauge the precise ramifications of a broadcast or

---

then it seems likely that future witnesses might reasonably resist videotape recordation. Such a result would be counter to the Rule and would impede the utilization at trial of a practical instrument of modern technology.

11. There is little point in granting Miss Foster's request that the videotape not be formally admitted into evidence and not be marked as an exhibit. Counsel for Miss Foster apparently made this request in order to evade application of the common law right of access. This Court need not, however, place form over substance. A determination of the applicability of the right properly focuses on the nature of the exhibit, not on whether it is formally admitted into evidence. Because, as the above discussion makes clear, the doctrine does not encompass videotaped testimonial evidence, admitting the tape into evidence or marking it as an exhibit need not require approval of the broadcasters' application.

12. *Nixon v. Warner Communications, Inc.*, 435 U.S. at 598, 98 S.Ct. at 1312; *In Re National Broadcasting Co., Inc.*, 653 F.2d at 613; *United States v. Mitchell*, 551 F.2d at 1260. *See also*, *United States v. Edwards*, 672 F.2d 1289 (7th Cir. 1982) (although a "strong presumption" favors access, the district judge did not err in considering other factors); *Belo Broadcasting v. Clark*, 654 F.2d 423 (5th Cir. 1981) (access to tape recording denied; the common law presumption is merely one of the factors which a trial judge must consider); Application of

KSTP Television, 504 F.Supp. 360 (D.Minn. 1980) (access to videotape denied when broadcast would serve no proper purpose).

13. Of course, a Court is properly concerned with the privacy and safety of a defendant as well. *See United States v. Mitchell*, 551 F.2d at 1263. However, the embarrassment stemming from the broadcast of activities of a defendant is likely to be "that which results whenever misconduct or questionable conduct is exposed." *Id.* at 1263–64. As the instant case indicates, a witness' privacy concern is likely to be quite different, since "misconduct" or "questionable conduct" are not involved.

14. Protection of the privacy of the participants in a trial is naturally a concern for all courts and it has, in fact, provided the basis for a number of rulings excluding news photographers from a court and its environs. *See Tribune Review Publishing Co. v. Thomas*, 153 F.Supp. 486, 494–95 (W.D:Pa.1957) (court denied the newspaper an injunction against the enforcement of a state court rule barring photographs in courts and environs, partially on the grounds that the state must protect the privacy of defendants); *In re Mack*, 386 Pa. 251, 259, 126 A.2d 679, 683 (1956) (court recognized the duty of courts to protect the privacy of criminal defendants against unwanted photographs), *cert. denied*, 352 U.S. 1002, 77 S.Ct. 559, 1 L.Ed.2d 547 (1957).

broadcasts of the videotape. However, this Court is not blind to the fact that the prosecution of an individual who allegedly tried to kill the President may possibly incite and provoke others within our society. Thus, even if a videotaped deposition might seem to fit within the ambit of the common law right of access to court records, that right is outweighed in this instance by the safety and privacy concerns expressed by Miss Foster.

### B.

■ The tape recorded telephone conversation between the defendant Hinckley and Jodie Foster stand on an entirely different legal footing. Unlike the videotaped deposition they constitute real evidence offered, according to the defendant, to demonstrate the persistence with which Hinckley sought to communicate with Jodie Foster. The tapes were admitted into evidence by this Court's April 22nd Order and will be played to the jury at the trial.[15] As such, they are "fully encompassed by the presumption in favor of access to judicial records." *In Re Application of National Broadcasting Co.*, 653 F.2d at 614. Although Miss Foster, unlike the litigants in the Watergate and Abscam tape cases, was an unwilling participant in these conversations, that distinction does not negate application of the right of access. In addition, while the Court is naturally concerned with the effect on the witness' safety posed by the broadcast of these recordings, the concern is outweighed by the common law principle.

For the foregoing reasons, this Court ORDERS:

That the videotaped deposition of Jodie Foster, a witness in Crim. No. 81–306, shall not be released to the public for copying or broadcast;

That the application of American Broadcasting Companies, Inc., Cable News Network, Inc., CBS Inc. and National Broadcasting Co., Inc., for permission to copy the videotaped deposition of Jodie Foster is denied;

That the Motion of Jodie Foster to Prohibit the Copying and Broadcast of Audio Tapes Containing Her Telephone Conversations is denied;

That the audio conversations between the defendant in Crim. No. 81–306 and Jodie Foster may be copied or broadcast by the public after they are played before the jury and are admitted into evidence in Crim. No. 81–306.

This is a final order, Rule 54(b), Fed.R. Civ.P.

---

**15.** Neither Miss Foster nor either of the parties in the Hinckley case have raised the question whether the making of these tapes was illegal under state law or under 18 U.S.C. § 2511(2)(d) and the Court offers no comment on the matter.