**UNITED STATES of America, Plaintiff,**

v.

**James B. McDOUGAL, Jim Guy Tucker, and Susan McDougal, Defendants.**

**No. LR–CR–95–173.**

United States District Court,
E.D. Arkansas,
Western Division.

June 11, 1996.

Sam T. Heuer, Attorney at Law, Little Rock, AR, for defendant James B. McDougal.

William H. Sutton, Friday, Eldredge & Clark, Little Rock, AR, Darrell F. Brown, Darrell F. Brown & Associates, Little Rock, AR, George B. Collins, Collins & Bargione, Chicago, IL, James Jacob Lessmeister, Attorney at Law, Little Rock, AR, for defendant Tucker.

Bobby R. McDaniel, McDaniel & Wells, P.A., Jonesboro, AR, Jenniffer Morris Horan, Federal Public Defender's Office, Little Rock, AR, for defendant Susan H. McDougal.

Philip S. Anderson, Williams & Anderson, Little Rock, AR, for movants Reporters Committee for Freedom of the Press, Radio–Television News Directors Association, Capital Cities/American Broadcasting Companies, Inc., Cable News Network, Inc., National Broadcasting Company, Inc., CBS, Inc.

George Jay Bequette, Jr., Skokos, Bequette & Smith, Little Rock, AR, for movant Dow Jones and Co., Inc.

John R. Tisdale, Wright, Lindsey & Jennings, Little Rock, AR, for movant William Jefferson Clinton.

Amy Joan St. Eve, Bradley E. Lerman, Jackie M. Bennett, LeRoy Morgan Jahn, William Ray Jahn, Office of Independent Counsel, Little Rock, AR, Rod J. Rosenstein, U.S. Department of Justice, Washington, DC, for U.S.

### ORDER

GEORGE HOWARD, Jr., District Judge.

On February 5, 1996, the Court granted the request of defendants Susan H. McDougal and James B. McDougal for an order directing the Clerk of the Court to issue a witness subpoena for President William Jefferson Clinton to appear and give testimony during their trial. James B. McDougal then moved to compel the personal attendance of President Clinton at trial. In response, President Clinton requested that he be allowed to testify by videotape deposition at a time and place of his choosing consistent with the discharge of his constitutional office.

In an Order dated March 20, 1996, the Court granted President Clinton's request that his testimony be taken by videotaped deposition pursuant to Fed.R.Crim.P. 15. On April 24, 1996, the Court ordered that the videotape be sealed and asked the parties to submit briefs within thirty days on the handling and release of the videotape after the deposition was played to the jury.[1]

On April 28, 1996, the videotaped deposition of President Clinton was taken at the White House, with the Court presiding via satellite in Little Rock, Arkansas. Pursuant to inquiries from the press and in recognition of the press' role "in preserving and perpetuating democracy in this nation over the centuries," the Court invited any representatives of the news media to file an *amicus curiae* brief with the Court on or before May 24, 1996.[2]

On May 3, 1996, a number of media organizations filed an application for access to the videotape deposition before or at the time it was to be played to the jury.[3] The Court denied the application on May 6, 1996, and on

---

1. The April 24th Order stated in relevant part:

   The Court has received inquiries from the media, the interested parties, and the public concerning release of the videotape of President Clinton's deposition. The Court directs counsel for the government, defendants, and the President to file within thirty days memoranda articulating their position with regard to the handling and release of the videotape.

   Pending a final Order of the Court, the Court directs that after the videotape of the President's deposition is presented at trial all copies of the videotape be delivered to the Clerk of the Court to be placed under seal.

2. On May 13, 1996, an application for release of the videotaped testimony was filed by Citizens United, which according to its application "is a non-profit organization ... which has played a crucial role in providing the public with information regarding the Whitewater scandal."

   Citizen United is a not a party to this action and is not a news media organization. The Court therefore finds that it does not have standing to appear in this action and its application is denied.

3. The applicants (hereinafter referred to as "media organizations") were Reporters Committee for the Freedom of the Press, Radio–Television News Directors Association, Capital Cities/American Broadcasting Companies, Inc. ("ABC"), Cable News Network, Inc. ("CNN"), National Broadcasting Company, Inc. ("NBC"), and CBS, Inc.

May 8, 1996, denied the media organizations' motion for reconsideration.[4]

The edited videotape deposition was played to the jury in open court on May 9, 1996, and a transcript was thereafter immediately released to the public.[5] Jury deliberations began on May 16, 1996, and on May 28, 1996, the jury returned verdicts of guilty on eighteen counts against James B. McDougal, two counts against Jim Guy Tucker, and four counts against Susan H. McDougal.[6]

On May 24, 1996, Dow Jones & Company, Inc. ("Dow Jones") filed a petition to intervene and an application for access to the *unedited* videotape and transcript of President Clinton's deposition.[7] President Clinton filed a motion for a protective order to preclude the distribution of the original and any copies of the videotape deposition testimony.

■ The Court is well aware of the constitutional right of the press and the public to attend a criminal trial. "[A] trial courtroom ... is a public place where the people generally—and representatives of the media—have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578, 100 S.Ct. 2814, 2828, 65 L.Ed.2d 973 (1980). Here, the Court, in recognition of the important role the press plays in ensuring "public scrutiny of a criminal trial," *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982), provided the media with virtually unlimited access to court proceedings. Only in a few instances where a compelling governmental interest required

closure of the proceedings, was the press barred.[8]

■ The issue before the Court is not the right to access by the press or the public to the videotaped deposition. Access has been provided. The videotape was played in open court, to a courtroom full to capacity. The Court tried diligently to accommodate members of the press to ensure that they would be able to view the videotape. The Court made written copies of the deposition testimony available to the public immediately after the videotape was played and a number of newspapers printed the deposition in its entirety.

Rather, the issue is whether the public has a right to obtain copies of the videotape recording itself. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978) ("Thus, the issue presented in this case is not whether the press must be permitted access to public information to which the public generally is guaranteed access, but whether these copies of the White House tapes—to which the public has never had *physical* access—must be made available for copying.") The press argues that it has both a common law and constitutional right to the videotape.

The Supreme Court has made clear that the Constitution does not provide the press the right under the First Amendment to copy a tape introduced into evidence, as long as the Court allows access to the information contained on the tape by other means.

The First Amendment generally grants the press no right of information about a

---

4. The applicants filed an appeal and a petition for expedited review in the United States Court of Appeals for the Eighth Circuit. The Circuit Court dismissed the appeal on May 17 for lack of jurisdiction.

5. After the deposition was taken, counsel for the government and the defendants reviewed a draft of the entire written transcript, and agreed to delete certain portions that generally contained objections and argument of counsel. The videotape was then edited in compliance with the written corrections, and a written edited transcript was made part of the record.

6. The August 17, 1995, Indictment charged defendants with criminal wrongdoing in financial transactions involving Madison Guaranty Sav-

ings & Loan Association and Capital Management Services, Inc., a small business investment company licensed by the Small Business Administration.

7. Dow Jones is publisher of *The Wall Street Journal* and various other news publications and services.

8. In an effort to ensure full access to court proceedings, the Court generally allowed media representatives to attend in-chamber conferences. The Court made available daily transcripts of the proceedings, which included bench conferences.

trial superior to that of the general public. 'Once beyond the confines of the courthouse, a news gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public.' *Warner Communications*, 435 U.S. at 609–610, 98 S.Ct. at 1318 (quoting *Estes v. Texas*, 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543 (1965) (Harlan, J. concurring)). The Eighth Circuit, relying on *Warner Communications*, found that the press did not have a constitutional right to copy audiotapes that were admitted into evidence in a mail fraud trial. *United States v. Webbe*, 791 F.2d 103, 105 (8th Cir.1986).

The Court therefore finds that the press does not have a constitutional right to copy the videotape. The First Amendment right of the press is fully satisfied in this instance by allowing the press to attend the playing of the videotaped deposition to the jury and in providing full access to the written transcript. *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 427 (5th Cir.1981) (no First Amendment right to copy audiotapes between defendants and FBI agents in connection with sting operation concerning alleged bribery in awarding state employee insurance contracts in Texas. "Constitutional requirements are fully satisfied by the kind of untrammeled access to the information" provided where the members of the press allowed to listen as tapes played in court and transcripts were prepared and distributed for their use.)

▓ Dow Jones and the media organizations argue that they have a common law right of access to the videotape. The common law right of access to judicial records and documents is well established. The right, however, is not absolute, and the decision as to access is left to the Court's sound discretion. *Webbe*, 791 F.2d at 106.

▓ President Clinton and the defendants argue that the common law right of access does not apply to a deposition, as the videotape itself was not admitted into evidence.

As noted by the district court in denying the press' request to copy the videotaped deposition of Jodie Foster, a witness in the prosecution of John Hinckley, the taped testimony should be treated in the same fashion as the testimony of any live witness at trial. The court concluded that the videotaped deposition "is not encompassed by the common law right of access to judicial records and the broadcasters, therefore, have no right to copy and broadcast the recording." *Application of American Broadcasting Companies, Inc.*, 537 F.Supp. 1168, 1172 (D.D.C.1982). *See also United States v. Beckham*, 789 F.2d 401, 411 (6th Cir.1986) (transcripts are not public records as they were not admitted into evidence; therefore no common law right to inspect and copy).

However, the court in *In re Application of CBS, Inc.*, 828 F.2d 958 (2d Cir.1987) held contrary, finding that the right to copy and inspect judicial records includes videotaped depositions. *See also Smith v. United States District Court*, 956 F.2d 647 (7th Cir.1992) (common law right of access not limited to items in evidence; judicial records include everything that is part of the court proceedings).

The Court need not decide at this time whether the common law right of access applies to videotaped testimony because even assuming it does, the Court finds, on balancing all the relevant factors, that the press' request to copy the videotape must be denied.

In weighing the factors, the Court has considered the strong interest of the public and the press in access to judicial proceedings and in obtaining important information. However, a number of factors militate against release of the videotape for copying. First, as discussed above, the press has attended the trial, reported the events of the trial to the public, and had a transcript of the videotaped deposition available to it. Thus, "substantial access" has already been accorded the press and public. *See Webbe*, 791 F.2d at 106 (cites omitted).

Second, the Court is not persuaded that access to the videotaped testimony of the President should be treated differently from that of any other witness. The Court, in its

March 20, 1996, Order authorizing that President Clinton's testimony be taken by a Rule 15 videotaped deposition found that "in-court testimony would be unduly burdensome to the President in the performance of his official duties." Had President Clinton testified live at the trial, Rule 53 of the Federal Rules of Criminal Procedure, and Local Rule F–5 would have prohibited photographing or broadcasting any of the testimony. *See also Conway v. United States,* 852 F.2d 187 (6th Cir.1988). To single the deposition testimony out for special treatment would contravene the Court's concern with accommodating the interests of the Presidency and might impede any future attempts to tailor an arrangement for obtaining a President's testimony while minimizing the intrusion on his duties.

Third, the Court has considered the unique circumstances of this case and the manner in which the depositions of Presidents Ford and Carter were handled. In each of those instances, the district court proscribed public access to the tape.[9]

Fourth, the Court has considered the potential for misuse of the tape. In this regard, the Court does not believe that the press has improper motives in obtaining the videotape or would seek to distort or misuse it. Nevertheless, once released and rebroadcast, the press cannot maintain control over individuals who might copy the broadcast and edit it to suit their purposes. The Supreme Court in *Warner Communications* recognized the potential for abuse if the Nixon tapes were released. "Nor would there be any safeguard, other than the taste of the marketing medium, against distortion through cutting, erasing, and splicing of tapes." 435 U.S. at 601, 98 S.Ct. at 1314.

In sum, the balance of factors weigh in favor of denying the press' request to copy the videotape.[10] The Court will grant the President's request for a protective order, and the videotape, both edited and unedited, will remain under seal until further Order of the Court.

Dow Jones also asks that the Court release the unedited portions of the transcript that remain under seal. The President, government, and defendants do not object to this request. The Court is of the opinion that releasing a written transcript of the unedited portions of the deposition is in keeping with its policy of providing the press with full access to the proceedings.[11]

Thus, the Court directs the court reporter to prepare a written transcript of the entire deposition which will be made a part of the official record in this case.[12]

Accordingly, the motion of the President for a protective order is granted to the extent that all copies of the videotape of President Clinton's deposition shall remain under seal until further Order of the Court. The Application of the Reporters Committee for access is denied; Dow Jones' petition to intervene and application for access is granted in part and denied in part. The Court will grant Dow Jones' request for access to the unedited written transcript of the deposition.

IT IS SO ORDERED.

---

9. The court in *United States v. Fromme,* 405 F.Supp. 578 (E.D.Cal.1975), ordered that the tape be retained in the safe of the Clerk of the Court for the Eastern District of California and not be released to anyone except on order of the Court. Similarly, in *United States v. Kidd,* the court's order of April 10, 1978, provided that the videotape would not be furnished to anyone other than the court.

10. The Court has also considered defendants' argument that release of the videotape would deny them a fair trial. Defendant Tucker is facing a second indictment which has not yet gone to trial. The Court, however, is of the opinion that the release of the videotape would have little impact on Tucker's second trial and that this factor does not weigh heavily in favor of not releasing the videotape.

11. Had President Clinton testified at trial, the press would have had access to the objections and argument of counsel.

12. There is no longer a need to keep the court reporter's tapes, notes and computer diskettes under seal and they will be returned to the reporter.