UNITED STATES of America

v.

**John M. POINDEXTER.**

**Crim. No. 88–0080–01.**

**Misc. No. 90–0045 (HHG).**

United States District Court,
District of Columbia.

Feb. 15, 1990.

Lawrence E. Walsh, Independent Counsel, Dan K. Webb, Louise R. Radin, Associate Counsel, Christian (Chris) J. Mixter, Howard M. Pearl, Office of the Independent Counsel, Washington, D.C., for prosecution.

Richard W. Beckler, Joseph T. Small, Jr., Stephen M. McNabb, Frederick Robinson and Michael G. McGovern, Fulbright & Jaworski, Washington, D.C., for defendant John M. Poindexter.

Theodore B. Olson, John A. Mintz, Michael B. Rappaport and Julia A. Dahlberg, Gibson, Dunn & Crutcher, Washington, D.C., for former President Ronald W. Reagan.

David Anderson, James S. Reynolds, Thomas Millet and Douglas Letter, U.S. Dept. of Justice, Washington, D.C., for the U.S. and the Archivist of the U.S.

Timothy B. Dyk and Patrick J. Carome, Wilmer, Cutler & Pickering, Washington, D.C., for applicants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Seven news organizations have applied for access to the videotaped deposition of President Reagan, to be held February 16, 1990 at the United States Courthouse in Los Angeles.[1] The request implicates in varying degrees rights of the news organizations, the former President, the defendant, the prosecution, and the public. The Court has carefully considered all these interests.

### I

On February 5, 1990, the Court ordered that former President Reagan testify by videotaped deposition at the defendant's trial. The Order declared that the Court would preside over the taking of the deposition to hear argument and rule, *inter alia*, on assertions of executive privilege by the former President or by President Bush as well as on issues arising under the Classified Information Procedures Act (CIPA).[2]

The Court had then and it has now a deep concern about the risk of public disclosure in the course of President Reagan's testimony of sensitive national security and foreign policy information. Mr. Reagan was, of course, privy to the nation's most closely-guarded secrets until a little more than a year ago, and the issues in the instant case are infused with classified information. Indeed, it was in substantial part in order to avoid the unnecessary public revelation of such information that the Court directed that the former President's evidence be taken by non-public videotaping rather than during the trial itself. Opinion of February 5, 1990 at 46–49.

On February 12, 1990, as indicated, a number of news organizations submitted an application to the Court seeking "to attend the direct and cross-examination of former President Reagan." Application at 2. Cited in support of the application are the First Amendment, Local Rule 307,[3] and the common-law right of access to judicial

1. The application was filed on February 12, 1990 by Cable News Network, Inc., Capital Cities/ABC, Inc., CBS, Inc., National Broadcasting Co., Inc., The New York Times Company, The Times Mirror Company, and The Washington Post. On February 13, 1990, these parties were joined by the Associated Press, Dow Jones & Co., National Public Radio, USA Today, and Gannett News Services, Inc.

2. 18 U.S.C.App. IV.

3. The claim to access under Local Rule 307 must fail since the rule does not apply to "matters normally handled *in camera*." Rule 307(a).

records.[4]  In the alternative, applicants request access to copies of the videotape of the deposition as soon as the classified information has been redacted.  The Court has considered the application, as well as supporting and opposing memoranda, and it has heard oral argument from counsel for the news organizations and others.  The Court now holds that because top secret and other extremely sensitive information will pervade the deposition, it will be held *in camera*.  However, once the classified information has been edited from the videotape, the Court will order its public release.

## II

■  Viewed in one way, the deposition of former President Reagan is nothing more than a pretrial proceeding.  Although the First Amendment normally guarantees to the public and the press the right to attend criminal trials,[5] the right of access to pretrial proceedings is only a qualified one.  *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 13, 106 S.Ct. 2735, 2742, 92 L.Ed.2d 1 (1985).[6]  In deciding whether such access is mandated, the courts have looked to two factors: historical tradition and the public purpose to be served by public access.[7]  *See Press–Enterprise*, 478 U.S. at 6–13, 106 S.Ct. at 2739–2743; *In Re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir.1986).

■  It could hardly be argued that there is a tradition of public access to the type of pretrial proceeding involved here for, as the Court has previously explained, the provision of evidence by former or sitting Presidents of the United States has been extremely rare, and in each such instance the court having jurisdiction has had to fashion procedures tailored to the particular situation.  Moreover, there has never been an instance of public testimony by a former President in a pretrial hearing, much less in a hearing that involves the President's knowledge of sensitive activities.[8]  Perhaps of equal, if not more, importance is the fact that Congress has expressly mandated by its enactment of CIPA that pretrial proceedings involving classified information, as this one certainly will, shall be held *in camera*.[9]  *See also*, Fed.R. Crim.P. 16(d)(1).

Similarly, the public interest could well be injured by the attendance of press representatives at the deposition.  As discussed below, it is impractical to screen out in advance all the sensitive security information that could be revealed in the course of the former President's examination and cross-examination.  The strong likelihood is therefore present that information damaging to national security will be revealed.  For these reasons, the news media are not entitled to attend this deposition if it is to be considered as a pretrial proceeding to

---

**4.**  *See* note 8, *infra*.  On February 13, 1990, defendant supported the media position by an assertion of his Sixth Amendment right to a public trial.  In its February 5, 1990 Opinion, the Court discussed in detail the reasons why, upon an appropriate consideration of defendant's rights as well as of the rights of the former President and of the Presidency, the taking of Mr. Reagan's testimony by way of deposition effected an appropriate balance.  *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984), upon which defendant presently relies, recognizes that prejudice to other interests may be considered by the Court in this connection.

**5.**  Such right of attendance may be curtailed if that is required to "protect defendant's superior right to a fair trial or that some other overriding consideration requires closure."  *Richmond Newspapers v. Virginia*, 448 U.S. 555, 564, 100

S.Ct. 2814, 2821, 65 L.Ed.2d 973 (1980) (Burger, C.J., joined by White and Steven, JJ.).

**6.**  It is clear, for example, that there is no right of public access to grand jury proceedings.  *Press–Enterprise*, 478 U.S. at 9, 106 S.Ct. at 2740.

**7.**  Even if there is a tradition of access and access would serve a public interest, the right may be overcome by a showing that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  *Press–Enterprise*, 478 U.S. at 13–14, 106 S.Ct. at 2742–2743.

**8.**  On this basis, it cannot be said that there is a common law right of access here.

**9.**  While CIPA obviously cannot override a constitutional right of access, it is indicative of a tradition and common usage in a situation involving sensitive information.

which only a qualified right of access attaches.

## III

Viewed in the light most favorable to the position of the media applicants, the February 16 proceeding will have two aspects: (1) a CIPA-type hearing [10] to determine the testimony and other evidence that may be admitted into evidence consistently with the demands of classification and necessary secrecy, and (2) the recording of testimony for use at the trial. Clearly, the press and the public are not entitled to attendance during the CIPA aspects of the hearing.

Disclosure of sensitive information is likely to occur in the normal course of the Reagan deposition, both during questioning and responses, and as colloquies are had between Court, counsel, and the witness with respect to the admission or rejection of particular questioning and particular testimony, as well as the need for substitutions pursuant to CIPA. For these reasons, the Court does not understand the media applicants to argue that they have a right to be present while national security information is disclosed or discussed.[11]

Instead, these applicants suggest that part of the hearing be open and part of it closed, and that the press representatives be asked to leave when a particular line of questioning is likely to elicit sensitive, classified information. Assuming that, somehow, the less highly classified of the initial or primary questions could be asked separately from the more sensitive ones—at a great cost in the continuity of questioning that counsel is entitled to maintain for effectiveness—little, if anything, would be gained by such a process. No one can know at this point what President Reagan's answers will be to these questions or the extent to which these answers will reveal classified, sensitive matters of state. That problem is magnified by the fact that, beyond the primary questions approved by the Court in its decision of February 5, 1990, counsel are entitled to ask follow-up questions dealing with the same general subject matter, and that the prosecution will conduct cross-examination. With respect to both these areas, the emergence of sensitive national security subjects is entirely unforeseeable.

In short, national security concerns may be expected to permeate the questioning, and the unforeseeability of their specific emergence at any point means that an attempt to have press representatives present at some parts of the examination but not at others, as the media applicants suggest, is not subject to reasonable implementation.[12] These difficulties are further exacerbated by the substantial possibility that, inasmuch as the relationship between the sensitive and the non-sensitive segments of the anticipated testimony is extremely close, information may be revealed inadvertently that should properly remain secret.[13]

---

**10.** The Court uses that terminology not necessarily in its technical sense but to denote a hearing at which highly sensitive classified materials are being discussed.

**11.** The Court has previously recognized that these risks cannot be eliminated by the procedures and hearings held under CIPA prior to the deposition. Opinion at 47–48. The media applicants' assertion that arguments of counsel regarding admissibility, proper scope of testimony, and the like will not be sensitive, Reply Memorandum at 7 n. 9, may be expected to prove completely erroneous.

**12.** The unavailability of reasonable alternatives is perhaps best documented by defendant's suggestion that if "classified information does inadvertently seep out, the Court may be able to strike the information from the public record and to preclude publication of that information." Defendant's Response at 3. It is frivolous to suggest that the Court could enjoin the assembled press corps not to publish what they have just seen and heard.

**13.** The applicants' argument that the former President has a great deal of experience speaking in the public spotlight, and that he is therefore unlikely to make inadvertent disclosures, Reply Memorandum at 8, misses the point. The dividing line between the sensitive and the non-sensitive information that will be at issue at the deposition is such that even lawyers who study the relevant papers at length frequently have difficulty separating one from the other. An instantaneous separation in the course of testimony under counsel interrogation can hardly be expected of a witness, whatever his public speaking experience.

The closed hearing is designed to permit the Reagan testimonial purposes and the CIPA-type purposes to be accomplished in one proceeding.[14] That obviously could not be done if the proceeding were opened to the public and the press.[15] For these reasons, the Court will reject the request for attendance of the representatives of the media at the deposition itself. *See Press–Enterprise*, 478 U.S. at 13–14, 106 S.Ct. at 2742–2743. However, as discussed below, access of the public and the press to the non-sensitive information resulting from the deposition can be achieved by alternate means.

## IV

It is important to keep in mind that the issue here is not whether, but rather when, the press will have access to President Reagan's testimony.

After the deposition of President Reagan has been concluded, the Court and the parties will meet to edit out of the videotape those portions which contain the sensitive material. As so edited, the tape will, of course, be available to the press and the public when it is played to the jury as part of the defendant's case.

Beyond that, it was initially the Court's view that release of the tape in advance of the trial itself should be mandated only if it appeared that such release would not be capable of invading defendant's rights, including his right to reveal his evidence at a time of his own choosing; his right to be free from possibly prejudicial pretrial publicity; and the possible juxtaposition by the media of the Reagan tape with tapes of defendant's testimony in Congress and the resulting *Kastigar* taint. However, it now appears that defendant supports broad access of the press to the testimony of President Reagan. Defendant's Response to Application for Access, filed February 13, 1990.[16] In view of that position by the defendant,[17] there would appear to be no

**14.** As the Court pointed out in its February 5, 1990 Opinion, the Court has an obligation, consistent with the history of Presidential testimony, and the admonitions of the Supreme Court and of the Court of Appeals, to keep judicial imposition on the head of a coordinate branch of government to a minimum. Respect for the constitutional prerogatives of the Chief Executive must therefore be considered in conjunction with the First Amendment rights of the press. In any event, even if more than one proceeding involving President Reagan were held, there is no assurance that the problem of disclosure of sensitive information could thereby be resolved.

**15.** It must also be considered that the former President may in the course of the deposition need to consult with his own counsel, as well as with counsel for the incumbent President, concerning the assertion of executive privilege regarding some of the questions. As the Department of Justice correctly notes, "[s]urely, the Court did not intend that such sensitive consultations and decisions ... woul occur in the context of a live news broadcast." Opposition at 3. Discussions regarding privilege, including such traditional privileges as those between husband and wife and physician and patient, are appropriately held *in camera. United States v. Cianfrani,* 448 F.Supp. 1102, 1108 (E.D.Pa.1978), *rev'd on other grounds,* 573 F.2d 835 (3rd Cir. 1978).

**16.** Inasmuch as the Court raised the issue of possible injury to defendant's interests at the February 12, 1990 hearing, it may be assumed that defendant has knowingly considered these consequences. The Court may be called upon to decide at a future time whether defendant's position taken in that Response amounts to a waiver of his right to complain about any taint resulting from the pretrial release of the edited videotape.

**17.** In his Response to the application of the media filed February 13, 1990, defendant requests in regard to the possibility of pretrial publicity that the Court reschedule the deposition until after the government presents its case-in-chief. Not only has defendant never advanced this proposal before, despite numerous and more suitable opportunities to do so, but he has, in the past, sharply criticized this very plan as unworkable. Defendant's Memorandum of January 8, 1990 at 29–30.

It was on the basis of defendant's arguments that the Court rejected requests for a deferral of the Presidential testimony until after the prosecution had completed its case-in-chief. Opinion of February 5, 1990 at 32 n. 44. The Court and the Independent Counsel have proceeded on the basis of that decision and, as the Court was advised by counsel, President Reagan has so arranged his schedule as to be available for the deposition on February 16, 1990. Defendant's eleventh hour conversion to the position he opposed earlier comes too late. In any event, the factor of prejudicial publicity is not such that it would justify acceptance of defendant's change of position.

legitimate legal obstacle to early access of the public to the videotaped testimony. The Court will therefore order the release of the tape to the public and the press as soon as the editing process has been completed.[18]

The Supreme Court noted in *Press–Enterprise*, 478 U.S. at 9, 106 S.Ct. at 2740, that "openness in criminal trials, ... enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." One of the reasons for this conclusion is that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id.* at 13, 106 S.Ct. at 2742. Immediate post-editing disclosure of the videotape will give assurances of fairness to both the public and the accused, as open criminal proceedings are properly designed to do, but it will do so without jeopardizing sensitive national security information.

Accordingly, it is this 15th day of February, 1990

ORDERED that the application of the news media for attendance at the deposition of former President Reagan be and it is hereby denied; and it is further

ORDERED that the application of the news media for access to the former President's videotaped deposition be and it is hereby granted, such access to be effected as soon as the editing of the tape has been completed.

---

**18.** The Court expects that, in the absence of extraordinary disputes between the parties regarding classified materials, this process will not consume more than two or three working days.