**UNITED STATES of America**

v.

**John M. POINDEXTER.**

**Crim. No. 88–0080–01 (HHG).**

United States District Court, District of Columbia.

Feb. 22, 1990.

Lawrence E. Walsh, Independent Counsel, Dan K. Webb, Louise R. Radin, Associate Counsel, Christian (Chris) J. Mixter,

---

Howard M. Pearl, Office of the Independent Counsel, Washington, D.C., for prosecution.

Richard W. Beckler, Joseph T. Small, Jr., Stephen M. McNabb, Frederick Robinson and Michael G. McGovern, Fulbright & Jaworski, Washington, D.C., for defendant John M. Poindexter.

Theodore B. Olson, John A. Mintz, Michael B. Rappaport and Julia A. Dahlberg, Gibson, Dunn & Crutcher, Washington, D.C., for former President Ronald W. Reagan.

David Anderson, James S. Reynolds, Thomas Millet and Douglas Letter, U.S. Dept. of Justice, Washington, D.C., for the U.S. and the Archivist of the U.S.

Timothy B. Dyk and Patrick J. Carome, Wilmer, Cutler & Pickering, Washington, D.C., for applicants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

On February 15, 1990, the Court stated that following the conclusion of the videotaped deposition of former President Reagan, it would grant access to the tape to the representatives of the news media. The deposition was held on February 16 and 17, 1990; the tape has now been processed and transported from Los Angeles to Washington, D.C.; and the security agencies have reviewed it for problems related to classified information. The Court has requested expressions of the views of the interested parties regarding the form of access by the media. The responses of the parties are as follows.

### I

Defendant opposes release of the former President's testimony in any form at this time; in his view, the testimony should not be released to the public until such time as the videotape is introduced into evidence as part of his case at the trial. The Court has, of course, rejected that position in the past. *See* February 15, 1990 Opinion at 11 n. 17.[1] Defendant also expresses his con-

cern regarding prejudicial pretrial publicity and he argues that, if access to President Reagan's deposition testimony is ordered, it should be as limited as possible; *i.e.*, the order should not include distribution to, or access to the videotape by, the news media.

Counsel for President Reagan and the Department of Justice also refer to pretrial publicity, and they go on to advance additional reasons why, if access to the former President's testimony is to be granted to the press at all at this time, it should not be by way of physical dissemination of the tape itself. Thus, counsel for the former President argue, *inter alia*, that dissemination of copies of the videotape "may lead to the distribution of edited, distorted, truncated or elliptical versions of the former President's words," a development that would have an adverse effect on the dignity of the presidency and constitute a disincentive to Presidential testimony in future cases. Former President's Memorandum at 3. The Independent Counsel takes no position on the use of the tape; he states that he would be comfortable with any decision made with respect thereto by the Court. Finally, the media applicants renew their request for copies of the tapes.

### II

■ The Court once again rejects defendant's plea for a substantial delay in the release of the Reagan testimony. As it indicated on February 15, 1990, the Court is of the view that, under the mandate of the First Amendment and the appellate decisions, access to that testimony may not be withheld for several weeks or months until the evidence is actually used at the trial. The press and the public were not admitted to the deposition itself; but in view of the requirement of openness of criminal proceedings, this segment of the Poindexter criminal trial should not be kept secret. The public is entitled to know now to what the former President testified.

To that end, and to implement its decision of February 15, 1990, the Court will be making available today stenographic tran-

---

**1.** The Court also notes, once again, that defendant's various positions on this issue occupy

several segments of the spectrum. February 15, 1990 Opinion at 10–11.

scripts of the testimony as it was recorded by a court reporter on February 16 and 17, 1990. Further, inasmuch as a videotape of that testimony was taken and copies are available, the Court also orders that such representatives of the news media as wish to watch and listen to that tape may do so now. However, conscious of the arguments advanced by the defendant and by the former President, and for the reasons detailed below, the Court will not furnish copies of the videotape to the media representatives at this time.[2]

### III

The principal issue at this time concerns the scope of pretrial publicity, particularly publicity that may be prejudicial to defendant. The trial, which has twice been postponed, is now due to start in eleven days. If the videotape of the former President's testimony were distributed to the news media, parts thereof would no doubt be broadcast, perhaps on a substantial scale, on television and radio. Such publicity so close to the start of the trial would be likely both significantly to complicate the process of jury selection and to create possible *Kastigar* problems. To be sure, there was publicity involving the events which will be the subject of the trial when these events happened; however, that publicity occurred several years ago, and it has probably long been forgotten by most potential jurors.

■ It is likewise true that there has been and will be publicity of the Iran-contra affair; of the charges against this defendant; and of President Reagan's testimony based on the written transcript, the viewing by reporters of the tape itself, and otherwise. Such incidental publicity is inevitable in a case such as this. But there can be no disputing the fact that, should copies of the tape itself be made freely available, the breadth of the publicity would be increased manifold.[3] Prejudicial pretrial publicity should not be vastly max-

imized, however, if that can be done consistently with other values, including the First Amendment rights of the press.

If the only choice were one between the publicity generated by the broadcast of parts of the tape on television and radio, on the one hand, and a complete news blackout by the Court of the former President's testimony, on the other, obviously even the risk of an adverse effect on the rights of defendant from the ensuing publicity would have to be endured: the tape would have to be released for broadcasting. In that event, the Court and counsel would have to attempt to mitigate that effect, as best they could, by a more intensive voir dire of the prospective jurors and perhaps by other measures. But that is not the choice.

As indicated, the Court will not delay access to the tape by the news media and the public, and it will at the same time make available copies of the full transcript to all who would purchase copies. These two measures will ensure that the representatives of the news media will be placed in precisely the same position they would have occupied had the former President testified during the trial itself and had they attended the trial sessions. On this basis, the media applicants have hardly any valid cause for complaint. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978).

It also follows that the fear expressed by these applicants on February 12 and 14, 1990, that closure of the proceedings would cast public doubt on the fairness of the proceedings will not materialize. The public's right to know—to the extent that it is interested in knowing what the former President said last week, and even how he looked and behaved when he said what he said—will not be impaired. That right will be fully safeguarded. Thus, the real question before the Court is whether representatives of each news organization have the right to receive a copy of the tape for their use on and off the air, in addition to their

---

**2.** It is the Court's intention to provide such copies to the interested news media after the videotape is played at the trial itself.

**3.** This would depend, of course, upon the judgment of the various broadcast organizations regarding the news value of the former President's evidence.

being able to read the words of the testimony on the transcript and to hear and see them spoken on the videotape.

The Court has granted access to the videotape by the press on the implicit theory urged upon it by the news media that, while the proceeding last week partook of both a deposition and trial testimony, for purposes of First Amendment issues it was primarily a part of the trial itself.[4] If the proceeding is a part of the trial for one purpose, it may also be deemed to be a part of the trial for others—*e.g.,* for purposes of the decision of the Judicial Conference of the United States not to allow the televising of federal court proceedings. *See generally,* Resolution G, Part IV of the Codes of Conduct for United States Judges, approved by the Judicial Conference in March 1962. In short, on the most basic level, the need to avoid maximizing pretrial publicity on a vast scale to the detriment of the defendant's right to a fair trial clearly outweighs any right the news organizations might have to physical possession of copies of the videotape.

Beyond these considerations, the Court must also be mindful of its obligations under the Constitution to keep intrusions on the presidency to a minimum. As counsel for the former President correctly observe, "it would be ironic if the fact of videotaping [required to protect the interests of the presidency and the separation of powers] were used to expand access to the former President's testimony beyond the scope of access to the testimony of other witnesses." Memorandum dated February 20, 1990 at 3; *see also,* Department of Justice Memorandum at 2.[5] This factor further weights the balance against the physical distribution of the tapes.

## IV

Upon an evaluation of these various considerations, the Court has decided, and it is hereby

**4.** *See, e.g.,* Applicants' Reply Memorandum at 3–4.

**5.** The Department of Justice also notes that in *United States v. Fromme,* 405 F.Supp. 578 (E.D. Cal.1975), a copy of the videotaped deposition of

ORDERED that the press applicants which filed with the Court on February 12, 1990, and any other members of the press and the public may (1) at any time during business hours today and tomorrow, in Courtrooms 1 and 3 in the United States Courthouse in Washington, D.C., attend playings of the videotape of the testimony former President Reagan gave in Los Angeles on February 16 and 17, 1990; and (2) purchase transcripts of that testimony from the Clerk of the Court, in Room 1834 of the Courthouse, beginning this date; and it is further

ORDERED that the request of these applicants for physical possession of copies of the videotape is denied.

President Ford was not released to the public prior to trial, but a transcript was made available to the public and the press at the time the tape was played at the trial.