State of NEW YORK, et al., Plaintiffs,

v.

MICROSOFT CORPORATION, Defendant.

No. CIV.A.98–1233(CKK).

United States District Court, District of Columbia.

Feb. 24, 2002.

Kevin James O'Connor, Wisconsin Department of Justice, Madison, WI, Alan R. Kusinitz, Attorney General of the State of New York, New York City, for plaintiffs.

Daryl Andrew Libow, Sullivan & Cromwell, Washington, DC, John Lehman Warden, Sullivan & Cromwell, New York City, for defendants.

## MEMORANDUM OPINION

KOLLAR-KOTELLY, District Judge.

This case comes before the Court upon the filing of a motion to intervene by a familiar group of media entities. Proposed Intervenors, the Associated Press, Bloomberg News, Cable News Network, LP, LLP, Dow Jones and Company, Inc., Los Angeles Times, The New York Times Co., The Washington Post, and USA Today (the "Media") seek leave to intervene in the above-captioned case "for the limited purpose of being heard in connection with their affirmative motion for public access to depositions taken and/or to be taken following remand from the Court of Appeals, and in connection with any other motion that would affect such access." Mot. to Intervene at 1–2. Also before the Court is the Media's motion for access to five specific depositions and to transcripts of all depositions taken in this case following remand from the Court of Appeals. In the event the depositions have already been taken, the Media request access to copies of the video recordings of the five specific depositions. Neither Defendant Microsoft nor the Plaintiff non-Settling States have filed any opposition to the Media's motion to intervene. Microsoft, however, has opposed the Media's motion for access. The non-Settling States have not filed any response to the Media's motion for access. Having reviewed the Media's unopposed motion to intervene, the Court shall permit the Media to intervene for the limited purpose of advancing their motion for access to depositions, deposition transcripts, and video tapes. With regard to the Media's motion for access, the Court concludes that the Media may have access to the transcripts and video tape recordings of the depositions of Steve Ballmer, James Allchin, Jim Barksdale, Mitchell Kertzman, and Scott McNeally, but are not entitled to access to transcripts of all of the depositions taken in this case.

### A. Rule 24 Intervention

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure which provides for two kinds of intervention: intervention of right and permissive intervention. Fed.R.Civ.P. 24. Intervention of right is

available upon timely application by an entity or individual which:

> claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).[1] Permissive intervention is available, at the Court's discretion, upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b).[2] In exercising its discretion pursuant to Rule 24(b), the Court is instructed to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

▆ The Media's request for intervention rests primarily upon the assertion the Media are entitled to intervene as of right. The Court cannot agree. While the Court does not dispute that the Media possess a general First Amendment interest in these proceedings, this interest, in the Court's view does not constitute an "interest relating to the property or transaction which is the subject of the action," as is required for intervention pursuant to Rule 24(a). Fed.R.Civ.P. 24(a). The Media cite to a number of cases in support of their motion, but these cases merely acknowledge that an intervention has been permitted and do not address the requirements provided in Rule 24(a). As a result, these cases are largely inapposite to the narrow issue presently before the Court.

▆ This circuit's precedent indicates that the appropriate avenue for advancing "third-party claims of access to information generated through judicial proceedings" is permissive intervention pursuant to Rule 24(b). *EEOC v. National Children's Center, Inc.,* 146 F.3d 1042, 1045 (D.C.Cir.1998) (quoting *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 783 (1st Cir.1988)). While admitted-

ly, the proposed intervenor in *National Children's Center* sought intervention only pursuant to Rule 24(b), the Court of Appeals "pause[d] to address the anterior question of whether intervention is a procedurally appropriate course for third-party challenges to confidentiality orders." *National Children's Center,* 146 F.3d at 1044–45. In conjunction with this inquiry, the court recognized that such motions to intervene "lack [ ] a clear fit with the literal terms of Rule 24(b)." *Id.* at 1045. This conclusion is equally applicable to press motions to intervene pursuant to Rule 24(a), and indeed, the incongruity of an assertion of intervention as of right is even more pronounced than with permissive intervention.

▆ Notwithstanding this dissonance, the *National Children's Center* court aligned itself with other courts "willing to adopt generous interpretations of Rule 24(b) because of the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings.'" *Id.* (quoting *Public Citizen,* 858 F.2d at 778). In doing so, the court noted that "the force of precedent . . . compels a flexible reading of Rule 24(b)." *Id.* at 1045–46. "Given this flexible approach and [this circuit's] longstanding 'tradition of public access to court records,' [the Court of Appeals] construe[d] Rule 24(b) as an avenue for third parties 'to have their day in court to contest the scope or need for confidentiality.'" *Id.* (internal citations omitted) (quoting *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325, 1333 (D.C.Cir.1985) and *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3d Cir.1994)).

In light of the Media's inability to satisfy the Rule 24(a)'s requirements for intervention as of right and, given this circuit's flexible reading of Rule 24(b) permissive intervention, the Court shall accept the Media's invitation to consider their motion pursuant to Rule 24(b). Mot. to Intervene at 4 n. 3. As suggested by the language of Rule 24(b), permissive intervention is "an inherently dis-

---

1. Intervention of right is also appropriate "when a statute of the United States confers an unconditional right to intervene." Fed.R.Civ.P. 24(a).

2. Permissive intervention is also appropriate "when a statute of the United States confers a conditional right to intervene." Fed.R.Civ.P. 24(b).

cretionary enterprise." *National Children's Center*, 146 F.3d at 1046. Adhering to the guidance in *National Children's Center*, the Court, in its discretion, shall permit the Media to intervene in the above-captioned case for the limited purpose of bringing this "affirmative motion for public access to depositions." Mot. to Intervene at 1.

### B.  Motion for Access

Turning to the substance of the Media' motion for access, the Media make three requests. First, the Media seek access for a pool of no more than three reporters to the depositions of Microsoft CEO Steve Ballmer, Microsoft Senior Vice President Jim Allchin, former Netscape CEO Jim Barksdale, Liberate Technologies CEO Mitchell Kertzman, and Sun Microsystems CEO Scott McNeally. Mot. for Access at 3–4. Second, conceding that they lack specific knowledge as to the timing of the five aforementioned depositions, the Media request, in the alternative, that the Court grant them access to copies of the video recordings of the depositions in the event the depositions "are taken prior to Court's ruling" on their motion. Mot. to Intervene at 4 n. 1. Third, the Media request access to transcripts of "all post-remand depositions taken in this action," redacted pursuant to the terms of the Protective Order in this case. *Id.* at 1. With regard to this third request, the Media ask that the transcripts be provided "within the 5–day time period provided in Paragraph 4 of the Protective Order." *Id.* at 16.[3]

While the public traditionally has had a right to attend judicial proceedings, "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In concert with this fact, pretrial discovery proceedings are generally "conducted in private as a matter of modern practice." *Id.* Nevertheless, the scheme created by the Federal Rules of Civil Procedure places the onus upon the party seeking to *exclude* others from pretrial discovery by requiring that party to obtain a judicial order authorizing such exclusion. *See* Fed.R.Civ.P. 26(c)(5). In order to obtain a protective order of this kind, the party seeking to exclude others from pretrial discovery must establish that good cause exists for such exclusion. *Id.; Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C.1987). In this regard, Rule 26(c) appears to balance the public's interest in open proceedings against an individual's private interest in avoiding "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c); *Seattle Times*, 467 U.S. at 31–32.

In this instance, the rubric of Rule 26(c) does not exactly fit. First and foremost, it appears that four of the relevant depositions have already been completed and the fifth deposition has not been noticed by any party. Microsoft Opp'n at 2. Thus, inasmuch as the Media seek access to those four depositions which have already been conducted, that request, as Microsoft appropriately argues, is moot.[4] *See* Microsoft Opp'n at 1–2. The

---

3.  Presumably, the Media are referring to Paragraph C.4. of the May 27, 1998, Protective Order, which provides:

Transcripts of depositions shall be given the protection afforded Confidential Information under this Order for a period of five (5) days after a complete copy of the transcript has been provided to the deponent or his or her counsel to give the parties and third parties an opportunity to designate information contained in the transcript as Confidential Information. Any party or third party that wishes to designate all or any portion of the transcript of a deposition as Highly Confidential Information shall so state on the record during the deposition. The transcript of the deposition shall then be given the protections afforded Highly Confidential Information under this Order for a period of five (5) days after a complete copy of the transcript has been provided to the

deponent or his or her counsel to give the parties and third parties an opportunity to designate information contained in that transcript as Highly Confidential Information.
*United States v. Microsoft*, No. 98–1232 (D.D.C. May 27, 1998) (Protective Order); *see also United States v. Microsoft*, No. 98–1232 (D.D.C. September 28, 2001) (Scheduling Order adopting the May 27, 1998, Protective Order); *United States v. Microsoft*, No. 98–1232, 2002 WL 319784 (D.D.C. January 28, 2002) (Memorandum Opinion confirming that the May 27, 1998, Protective Order remains in effect).

4.  With regard to the fifth deposition, it is not accurate to state that the issue of access is moot. While the deposition of Scott McNeally has not been noticed, it may be noticed at some point in the future. Thus, the Court has considered the Media's request for access to this deposition and

mootness of the issue of attending the four already-completed depositions renders much of the Media's argument and citation of authority only tangentially applicable. *See generally* Mot. for Access at 8–12 (citing *Estate of Rosenbaum v. New York City*, 21 Med. L. Rep. 1987 (E.D.N.Y.1987) and *United States v. Didrichsons*, 15 Med. L. Rep. 1869 (W.D.Wash.1988)). However, because the Media have requested access to these particular depositions, it seems appropriate to maintain the balance struck by Rule 26(c) in considering whether the Media are entitled to transcripts and video recordings of those depositions.

■ Adhering to the balance established in Rule 26(c), Microsoft retains the burden of establishing that access to transcripts and video recordings of the four depositions for which the Media seek access is burdensome or oppressive. Despite this burden and the fact that there are probably arguments which could be made,[5] Microsoft does not offer any affirmative evidence or argument to indicate that the release of redacted transcripts and video tapes would in any way burden, oppress, or embarrass the parties to the litigation or the third-parties who were deposed. Instead, Microsoft merely requests that the Court deny the Media's request for video recordings based upon the holding in *United States v. Poindexter*, 732 F.Supp. 170 (D.D.C.1990).

Citing to *Poindexter* in a footnote, Microsoft notes that, although the *Poindexter* court granted access to video recordings of a deposition in lieu of attendance at the deposition, the Court determined that the press should not be permitted to retain physical possession of the video tape copies. Microsoft Opp'n at 5 n. 5 (citing *Poindexter*, 732 F.Supp. at 173). Microsoft's reference to *Poindexter*, however, is unhelpful on this issue as some of the facts in that case are readily distinguished from the instant case. Most notably, the *Poindexter* court's decision regarding the provision of tapes rested, at least in part, upon the fact that *Poindexter* involved a criminal prosecution which would result in a jury trial. Thus, the *Poindexter* court reasoned that the "need to avoid maximizing pretrial publicity on a vast scale to the detriment of the [criminal] defendant's need for a fair trial clearly outweighs any right the news organizations might have to physical possession of copies of the videotape." 732 F.Supp. at 173. The same reasoning cannot be applied in this case, and tellingly, Microsoft fails to offer any explanation as to why provision of the transcripts and video recordings from these four depositions would be so troublesome and vexatious that the circumstances justify the denial of the Media's request. In the absence of any evidence or argument relating to the burden

determines that such access would be annoying, oppressive, and unduly burdensome. There is no dispute that disclosure of sensitive information is likely to occur throughout Mr. McNeally's deposition. As Microsoft points out in its memorandum, the Protective Order applicable to this case enables the parties to conduct depositions without regard to the disclosure of confidential information, reserving the designation of such information for *after* the completion of the depositions. *See* Microsoft Opp'n at 2–4. As explained in *United States v. Poindexter*, 732 F.Supp. 165, 168 (D.D.C.1990), the procedure of requiring press representatives to leave when a particular question or line of questioning is likely to elicit confidential information comes "at great cost to the continuity of questioning that counsel is entitled to maintain for effectiveness—little if anything, would be gained by such a process." Furthermore, separating confidential information from public information is not a simple task, and consequently, "information may be revealed inadvertently that should properly remain secret." *Id.* Based upon this logic, the Court finds

that there is just cause to exclude the media from attending the deposition of Mr. McNeally in conjunction with this case, if such deposition occurs. In the event that Mr. McNeally's deposition is taken in relation to this case, as discussed *infra*, the Media may have access to the redacted video recordings of the depositions as well as the redacted transcripts of the same.

5. The Court can imagine that, while confidential information in the deposition transcripts has already been designated pursuant to Paragraph C.4. of the Protective Order, the parties may not have made any such efforts with regard to the video recordings. Regrettably, Microsoft has not developed a factual record upon which the Court can rely in ascertaining whether the release of video taped depositions would be unduly burdensome, embarrassing or oppressive, nor have the relevant third-parties weighed in on the issue in order to develop such a record. The Court notes in this regard that the third parties may have a heightened interest in keeping their images, captured on video tape, out of the public domain.

of providing redacted [6] transcripts and video tape copies of the deposition testimony of Steve Ballmer, James Allchin, Jim Barksdale, and Mitchell Kertzman the Court will grant the Media's motion for access to transcripts and video recordings of these four depositions.[7]

▮ Turning to the issue of the Media's request for access to the transcripts of all depositions taken in this case following remand, the Court notes that the available case law on this particular issue is exceedingly sparse. The cases relied upon by the Media provide little guidance on the issue of access to all deposition transcripts, and in many instances, rely upon a provision in the Federal Rules of Civil Procedure which is no longer in force. *See* Mot. for Access at 13–15 (citing *Doe v. Marsalis,* 202 F.R.D. 233 (N.D.Ill.2001) (applying preDecember 1, 2000, version of Fed.R.Civ.P. 5(d)); *Northern States Power Co. v. Westinghouse Elec. Corp.,* 156 F.R.D. 168 (D.Minn.1994) (same); *Hawley v. Hall,* 131 F.R.D. 578 (D.Nev.1990) (same); *In re Texaco,* 84 B.R. 14 (Bkrtcy. S.D.N.Y.1988) (same)). Similarly, Microsoft's response to the Media's motion does not offer new case law, but merely attempts, albeit successfully, to further distinguish the cases relied upon by the Media. *See generally* Microsoft Opp'n at 4–8. Thus, it appears that both parties come to the Court without any substantial legal basis to support their respective positions. Beyond an assertion of general public interest in the litigation, the Media have not provided any argument to explain why access to the transcripts of dozens of depositions is appropriate. In this regard, the Court's greatest concern arises from the fact that the Media do not attempt to differentiate among the deponents, nor to identify the particular need for the transcripts of each and every deposition taken in this case following remand.

The Media's request for transcripts is most flawed in its reliance upon the former version of Federal Rule of Civil Procedure 5(d), and the case law arising therefrom. The former version of Rule 5(d) required, in essence, "that all discovery materials must be filed with the district court, unless the court orders otherwise." *In re Agent Orange Product Liability Litigation,* 821 F.2d 139 (2d Cir.1987), *superseded by rule as stated in SEC v. Thestreet.com,* 273 F.3d 222 (2d Cir. 2001). In stark contrast, the current version of Rule 5(d) provides "no presumption of filing all discovery materials, let alone public access to them. Indeed, the rule now prohibits the filing of certain discovery materials unless they are used in the proceeding or the court orders filing." *Thestreet.com,* 273 F.3d at 233 n. 11; *see also* Fed.R.Civ.P. 5(d) ("All papers ... must be filed with the court ... but disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses *must not be filed* until they are used in the proceeding or the court orders filing: (i) depositions, (ii) interrogatories, (iii) requests for documents or to permit entry upon land, and (iv) requests for admission.") (emphasis added). In the changed landscape of the amended version of Rule 5(d), the Media's request for access to transcripts of all depositions taken in the above-captioned case is unprecedented and without basis in law. Having been provided no legitimate reason to authorize such far-reaching access to pretrial discovery materials and, in the absence of precedent which indicates a clearly established right to access to all such materials, the Court declines to create new law by granting the Media's extensive request for transcripts. Accordingly, the Court shall deny the Media's request for transcripts of all of the depositions taken in this case following remand.

Based on the foregoing, it is this 24th day of February, 2002, hereby

---

**6.** Although Paragraph C.4. of the Protective Order applies only to "transcripts of depositions," *United States v. Microsoft,* No. 98–1232 (D.D.C. May 27, 1998) (Protective Order), video tape copies of depositions provided to the press are to be redacted in accordance with this and any other relevant provisions of the Protective Order.

**7.** The Court presumes that the Media's offer to purchase transcripts of the depositions indicates an equal willingness to pay for any video tape copies they might receive. As a result, the Court fully expects that the Media will bear any additional cost to the parties resulting from the provision of redacted transcripts and video recordings of the relevant depositions.

**ORDERED** that the Media's motion to intervene is GRANTED pursuant to Rule 24(b) to the extent the Media seek intervention to advance the accompanying motion for access; and it is further

**ORDERED** that the Media's motion for access is GRANTED in part and DENIED in part; and it is further

**ORDERED** that redacted copies of the transcripts and video recordings taken at the depositions of Steve Ballmer, James Allchin, Jim Barksdale, Mitchell Kertzman, and Scott McNeally (if appropriate) shall be provided to the Media in accordance with the above Opinion and the Protective Order entered in this case.

**SO ORDERED**.