Ronald FELLING, Plaintiff,

v.

Robert KNIGHT, Defendant.

No. IP 01–0571 C T/K.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 8, 2003.

James A. Geiger, William C. Potter II, Katz & Korin, P.C., Indianapolis, IN, for Plaintiff.

Gregory J. Utken, Baker & Daniels, James H. Voyles, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Russell E. Yates, Yates & Leal LLP, Denver, CO, for Defendant.

## ENTRY ON NON–PARTY INTERVENOR WTHR'S MOTION TO VACATE PROTECTIVE ORDER

BAKER, United States Magistrate Judge.

### I. Background

Upon his termination of employment as the assistant men's basketball coach at Indiana University ("IU"), Plaintiff Ronald Felling filed this suit against IU's then head coach Robert Knight, alleging constitutional and common law tort claims.[1] During dis-

---

1. Felling's complaint also asserted claims against IU, which were voluntarily dismissed without

covery, Felling deposed several individuals, including Mike Davis and John Treloar, both assistant coaches under Knight. After these depositions, a dispute arose over whether the deposition transcripts and videotapes generated therefrom could be released to the press. In response, on October 24, 2001, the Court entered a temporary protective order prohibiting Felling from releasing any information on the depositions of Davis and Treloar until the Court could further consider argument from the parties. On October 29, Davis, Treloar, IU, and Knight filed motions to extend the protective order indefinitely.

On November 5, 2001, WTHR, the local NBC affiliate, moved to intervene, unseal documents, and filed an opposition to Knight's motion for an extended protective order. The Court denied WTHR's motion to unseal pending the Court's order on whether an extended protective order was appropriate. [Docket # 40].

On December 21, the Court denied the motion for a protective order in that it ordered the release of the transcripts of the depositions of Davis and Treloar. The Court noted: "Although most of the contested portions of the deposition do not appear to be relevant to the dispute at hand, they also do not appear to be so sensitive or confidential as to warrant sealing the depositions." *Felling v. Knight,* 2001 WL 1782360, *2 (S.D.Ind. 2001). [Docket # 52]. However, in granting the motion to place under seal the videotapes of the depositions, the Court held:

> In an effort to avoid [embarrassment and frustration of the deponents], the court will grant the Non–Parties' request to seal the videotapes of the deposition testimony. Videotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as "soundbites" on the evening news. The potential embarrassment the Non–Parties would suffer at seeing themselves on the evening news constitutes good cause and requires this court to grant the Non–Party's motion for a protective order for the videotapes.

*Id.* at *3.

Since the entry of the protective order, Felling deposed Knight, assistant coach Pat

prejudice on August 6, 2001. [Docket # 21].

Knight, and assistant athletic director Steve Downing. The parties complied with the existing protective order and did not release the videotapes of these depositions.

On August 30, 2002, the Court held a settlement conference. The parties appeared in person, and the case was settled. The terms of the settlement agreement were filed with the Court and made public. The settlement agreement stated in relevant part, "Mr. Knight will not oppose any effort Mr. Felling may make to have the protective order in this case lifted for purposes of using the videotapes of the depositions for the sole purpose of the Indiana University litigation." [Docket # 95].[2]

After the parties reached a settlement, WTHR moved to vacate the protective order, seeking to discover the videotaped depositions of Davis, Treloar, Knight, Pat Knight, and Downing. Knight has filed an opposition to this motion, claiming that good cause still exists for the protective order to remain in place. For the reasons set forth below, WTHR's motion to vacate the protective order is GRANTED.

## II. Discussion

### A. Standard for Issuance of Protective Order

 Although the public traditionally has a right to attend judicial proceedings, "pretrial depositions and interrogatories are not public components of a civil trial," and as a result, pretrial discovery proceedings are generally "conducted in private as a matter of modern practice." *New York v. Microsoft Corp.,* 206 F.R.D. 19, 22 (D.D.C.2002), *quoting Seattle Times, Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). However, the public has a right to intervene in a case to obtain discovery privately exchanged between the parties and not filed with the Court. *See, e.g., Citizens First National Bank of Princeton v. Cincinnati Insurance Co.,* 178 F.3d 943, 945 (7th Cir.1999)

**2.** Felling has a civil suit against IU pending in state court.

("[m]ost cases endorse a presumption of public access to discovery materials ... the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."); *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 417 (S.D.Ind. 2001), *citing Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994) ("Public disclosure of discovery materials is open to the public unless the court finds that its records are being used for improper purposes.").

■ However, pursuant to Federal Rule of Civil Procedure 26(c), a litigant can prevent disclosure of pretrial discovery by obtaining a protective order. Rule 26(c) authorizes the issuance of a protective order provided that the moving party can show "good cause" exists for such an order. *Wilson v. Olathe Bank*, 184 F.R.D. 395, 397 (D.Kan.1999). The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding "annoyance, embarrassment, oppression, or undue burden or expense ..." *Flaherty v. Seroussi*, 209 F.R.D. 295, 297 (N.D.N.Y.2001) *quoting* Fed.R.Civ.P. 26(c). The party seeking a protective order has the burden to show good cause for it. *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D.Kan.1996). Whether to enter a protective order is within the sound discretion of the court. *Wilson*, 184 F.R.D. at 397, *citing Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir.1995).

■ In many cases involving the issuance of protective orders, the central question becomes whether "good cause" exists. To establish good cause, a party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Wilson*, 184 F.R.D. at 397, *quoting Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). *See also* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2035, at 483–86 (2d ed. 1994) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."); *Ash v. Theros Intern. Gaming, Inc.*, 2001 WL 648632, *1 n. 2 (N.D.Ill.

2001), *citing Citizens First Nat'l Bank*, 178 F.3d at 946 ("the district court must make a determination of good cause before the entry of an order sealing documents. Rule 26(c) would appear to require no less.") (citations omitted).

## B. Good Cause No Longer Exists For a Protective Order

Knight urges the Court to maintain the existing protective order in this case prohibiting the release of the videotaped depositions. Knight states that good cause still exists because "the media's interest in the videotapes appears to be based not on a desire to shed light on an important public event, but rather to humiliate the deponents and incite the prurient interests of a certain element of the public that is obsessed with the supposed dirty laundry of public figures." [Knight's Opp., p. 6]. The Court disagrees.

■ On December 21, 2001, when the Court entered the existing protective order in this case, good cause existed to prohibit the release of the videotapes of the depositions. However, the "potential embarrassment the [deponents] would suffer at seeing themselves on the evening news" has significantly lessened or outright disappeared. The passage of time has seen this federal court litigation amicably resolved by way of a Court-supervised settlement. To the extent interest remains in this now-completed litigation, the public has had over a year to absorb the contents of the deposition transcripts released to the press. In addition, it is hard to imagine the public could consume much more information about this action and the events surrounding it given that the deposition transcripts already have been released and, since that time, have been the subject of much public debate. Also due to the passage of time, any potential "embarrassment factor" for the deponents has also diminished. To a large extent, the deponents have moved on with their lives and secured other positions.

In any event, any potential embarrassment the deponents may experience resulting from the release of the videotapes is outweighed by the public's right to know. Seemingly few topics in the state of Indiana have generated

more attention or public debate in recent times than the events surrounding Knight's termination. *See, e.g., Citizens First National Bank,* 178 F.3d at 944 ("The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding ... the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding"); *Kobelco Metal Powder of America, Inc. v. The Energy Co-op., Inc.,* 2001 WL 1397311, *3 (S.D.Ind.2001) ("It has long been clear that the presumptive right of public access to court records is not limited to trial records but also includes records of potentially dispositive pretrial motions."); *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1309 (7th Cir.1984) (affirming district court order granting media access to previously sealed motion papers). Simply stated, Knight fails to show that the release of the videotapes two years after his termination, one year after the release of the deposition transcripts, and after the publicized settlement of this action "would in any way burden, oppress, or embarrass" the deponents. *See Microsoft Corp.,* 206 F.R.D. at 23 (court denied a motion to place under a protective order four videotaped depositions); *Flaherty v. Seroussi,* 209 F.R.D. 295, 299 (N.D.N.Y.2001) ("To rise to a level of good cause, any such embarrassment must be substantial.").

Finally, in the event the Court were to deny WTHR's motion, the Court would be endorsing a permanent protective order. The Seventh Circuit's decision in *Citizens First National Bank* warned about the issuance of permanent protective orders. In that case, the court noted that the protective order was "invalid for the additional reason that it is not limited to pretrial discovery; it seals the documents covered by it even after they are introduced at trial." *Id.* at 945. In remanding the case, the court of appeals described the protective order in place as "standardless, stipulated, permanent, frozen, [and] overbroad." *Id.* at 946. *See also Baxter Intern., Inc. v. Abbott Laboratories,* 297 F.3d 544, 548 (7th Cir.2002) ("the court will in the future deny outright any motion [ ] that does not analyze in detail, document by document, the propriety of secrecy, providing

reasons and legal citations ... Motions that simply assert a conclusion without the required reasoning, however, have no prospect of success."); *Union Oil Co. of California v. Leavell,* 220 F.3d 562, 568 (7th Cir.2000) (court ordered unsealing of the entire record and denied a request to hold oral argument outside the public realm); *In re Krynicki,* 983 F.2d 74 (7th Cir.1992) (blanket protective orders generally inappropriate). These decisions take a firm stance against permanent protective orders, and further support the conclusion that good cause no longer exists for keeping the instant protective order in place.

### III. Conclusion

Accordingly, WTHR's motion to vacate the existing protective order is GRANTED. The Clerk is directed to unseal the videotaped depositions pertaining to this case.

So ordered.