## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PARTNER INVESTMENTS, L.P., a Delaware limited partnership, PFM HEALTHCARE MASTER FUND, L.P., A Cayman Islands limited partnership, and PFM HEALTHCARE PRINCIPALS FUND, L.P., a Delaware limited partnership,

        Plaintiffs,

        v.

THERANOS, INC., a Delaware corporation, ELIZABETH HOLMES, an individual, RAMESH BALWANI, an individual, and DOES 1-10,

        Defendants.

--------------------------------------------------------

PARTNER INVESTMENTS, L.P., PFM HEALTHCARE MASTER FUND, L.P., and PFM HEALTHCARE PRINCIPALS FUND, L.P.,

        Plaintiffs,

        v.

THERANOS, INC., ELIZABETH HOLMES, FABRIZIO BONANNI, WILLIAM H. FOEGE, and DANIEL J. WARMENHOVEN,

        Defendants.

C.A. No. 12816-VCL

C.A. No. 2017-0262-JTL

## MEMORANDUM OPINION

Date Submitted: March 22, 2018
Date Decided: April 23, 2018

Alex Gibney, *pro se*

Gregory P. Williams, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware. *Attorneys for Elizabeth A. Holmes and Theranos, Inc.*

**LASTER, Vice Chancellor**

Theranos, Inc. is a life sciences company that claimed to revolutionize the laboratory testing industry with innovative methods for drawing and testing blood and interpreting patient data. In October 2015, the *Wall Street Journal* and other media outlets began publishing details about Theranos's technology and operations that cast doubt on Theranos's claims of innovation. In spring 2016, multiple government agencies began investigating claims that Theranos misled investors about the state of its technology and operations.

In October 2016, certain investors in Theranos commenced Civil Action No. 12816-VCL by filing a complaint against Theranos and certain of its directors and officers. The complaint asserted claims for fraud, negligent misrepresentation, indemnification, and violations of both Delaware and California law. In April 2017, the same investors commenced Civil Action No. 2017-0262-JTL by filing a complaint against certain directors and officers of Theranos. The complaint asserted claims for breach of fiduciary duty, self-dealing, and waste.

The parties proceeded with discovery. They exchanged documents and took a substantial number of depositions, many of which were recorded on video. For the most party, the parties did not file the deposition transcripts or video with the court. The only exceptions were excerpts from certain deposition transcripts that the parties filed in support of specific motions.

In May 2017, the parties settled their claims. Both actions were dismissed by stipulation. The cases remain closed.

Non-party Alex Gibney is a journalist and documentary film maker. By letter filed on February 22, 2018, he asked the court to grant him access to the depositions taken in the two cases. Because he is a film maker, he is particularly interested in the video. As the basis for his request, Gibney invokes the right of public access to judicial records.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."[1] "The public's right of access to judicial records has been characterized as fundamental to a democratic state."[2] The right of access enables the public to "judge the product of the courts in a given case."[3] This, in turn, "helps ensure 'quality, honesty and respect for our legal system.'"[4] Consequently, "all court proceedings are presumptively open to the public."[5]

Court of Chancery Rule 5.1 "reflects the Court of Chancery's commitment to these principles."[6] It states that, "[e]xcept as otherwise provided" in Rule 5.1, "proceedings in a

---

[1] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted).

[2] *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (internal quotation marks omitted) (quoting *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976)).

[3] *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Columbus-Am. Discovery Gp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000)).

[4] *Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *1 (Del. Ch. Mar. 27, 2013) (quoting *Cont'l Ill.*, 732 F.2d at 1308).

[5] *In re Nat'l City Corp. S'holders Litig.*, 2009 WL 1653536, at *1 (Del. Ch. Jun 5, 2009) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579 n.17 (1980)).

[6] *Horres*, 2013 WL 1223605, at *2.

civil action are a matter of public record."[7] This language "makes clear that most information presented to the Court should be made available to the public."[8]

The bulk of what most attorneys do in civil litigation neither takes place in court nor requires the active supervision of the court. Unless the parties bring a discovery dispute to the court's attention, the process of pre-trial discovery takes place in private.[9] These activities include exchanging documents, responding to interrogatories or requests for admission, and taking depositions.

For purposes of the public's right of access, materials developed during the pre-trial discovery process are not part of the presumptively public record until they are filed with the court, such as by being placed on the docket or lodged in evidence.[10] "[T]here is no public right of access under the first amendment, let alone at common law, to discovery materials as such."[11] Until the discovery materials are submitted to the court, the public's right of access does not apply.

---

[7] Ct. Ch. R. 5.1(a).

[8] *Sequoia Presidential Yacht Gp. LLC. v. FE P'rs LLC*, 2013 WL 3724946, at \*2 (Del. Ch. July 15, 2013).

[9] *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 n.19 (1984) ("Discovery rarely takes place in public. Depositions are scheduled at times and places most convenient to those involved. Interrogatories are answered in private.").

[10] *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987); *see also Seattle Times*, 467 U.S. at 33 ("pretrial depositions and interrogatories are not public components of a civil trial").

[11] *Mokhiber v. Davis*, 537 A.2d 1100, 1111 (D.C. 1988).

Gibney seeks access to discovery materials that were never filed with the court. Under settled precedent, Gibney cannot access these materials.

For the contrary proposition, Gibney cites *Trump Old Post Office LLC v. CZ-National, LLC*,[12] a decision issued by the Superior Court of the District of Columbia. There, the court made available for public access the full video of a deposition of then-President-elect Donald Trump that was taken in a civil suit involving a restaurant lease at the Trump International Hotel. The decision noted that "[t]he video recordings at issue are filed (1) into the current record in connection with dispositive motions, (2) without seal, and (3) in an active civil case."[13] In other words, the deposition testimony was presented to the court and became part of the presumptively public record. The court further held that, although the video recordings had not been filed in a form readily accessible by the public, the court would make them available. Because *Trump Old Post Office* involved material filed with the court, it does not help Gibney.

Ironically, the defendants cited what appears to be the strongest case in favor of Gibney's application, although they characterized it as supporting their position. In *New York v. Microsoft Corp.*,[14] members of the media asked that three reporters from a media pool be allowed to attend the deposition of Microsoft's CEO, another senior Microsoft

---

[12] Case No. 2015 CA 5890 B, slip. op. (D.C. Super. Ct. Sept. 29, 2016).

[13] *Trump Old Post Office*, slip op. at 8.

[14] 206 F.R.D. 19 (D.D.C. 2002).

4

executive, and three CEOs of other major technology corporations to be taken following the remand of the case from the United States Court of Appeals. Because the media did not know whether the five depositions had already been taken, they asked to receive the transcripts and any video recordings for any depositions that had taken place.[15] The media further "request[ed] access to transcripts of all post-remand depositions."[16] While declining to grant a broad right of access to all of the deposition transcripts, the court ordered production of the transcripts and video for four of the depositions.[17] There is no indication in the opinion itself that these depositions had been taken, much less filed with the court, when the court issued its ruling.

As written, the *Microsoft* decision runs contrary to what appears to be the weight of authority, so I suspect something else must have been going on that led the court to order the production of the transcripts and video. One possibility is that those depositions had been taken and had already become part of the judicial record, and the opinion neglected to mention these facts because they were assumed prerequisites to access. The *Microsoft* court's discussion of *United States v. Poindexter* makes this seem plausible.[18] The fact that

---

[15] *Id.* at 22.

[16] *Id.* (internal quotation marks omitted).

[17] *Id.* at 24.

[18] *See Microsoft*, 206 F.R.D. at 23-24 (holding that the deposition videotapes should be released to the media and distinguishing *Poindexter* as having involved criminal proceedings and implicated a criminal defendant's right to fair trial, resulting in the *Poindexter* court only allowing media to attend a screening of the videotaped deposition rather than obtaining a copy).

the *Microsoft* court denied the media's broader request for access to all deposition transcripts also lends credence to this possibility.[19] Consistent with this theory, the defendants described the *Microsoft* decision as "finding that nonparties have no right of access and cannot obtain copies unless a deposition transcript is ordered filed."[20] I personally cannot glean from the face of the *Microsoft* decision how the defendants could have described it in this fashion without speculating (as I have done) or investigating whether the transcripts had been filed (which I have not done, and their letter does not suggest). In any event, if the four depositions and transcripts were publicly filed, then that would explain the outcome in *Microsoft*.

Another possibility is that one party to the case wanted to permit the press to attend the depositions or otherwise provide the transcripts and video to the press. In that context, other courts have followed the *Microsoft* decision and held that a party can provide information obtained in discovery to the press or a third party or use it in other litigation. When another party to the litigation produced the information pursuant to a confidentiality order, courts have considered whether the party obtaining the information nevertheless could share or use it, and the press or other third party has sometimes intervened to argue in favor of permitting the information to be shared.[21] Under these circumstances, the media

---

[19] *See id.* at 24.

[20] CA. No. 12816-VCL, Dkt. 318 at 3.

[21] *See, e.g., Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) (party seeking relief from protective order to provide the press with deposition of Indiana University basketball coach Bobby Knight; press intervened and sought same relief); *SmithKline*

or other third party can gain access to discovery material that has not been filed with the court. That type of scenario might explain the outcome in *Microsoft*, but it is not the situation presented here. None of the parties in the underlying cases are seeking leave to give materials to Gibney.

The materials that Gibney seeks were never filed with the court and never became part of the presumptively public record. Because a threshold requirement for the public right of access has not been met, Gibney's request for these materials is denied.

Although this decision could stop there with the bright-line rule, one category of materials presents an interesting twist. Gibney has requested video corresponding to approximately 200 pages of excerpts from deposition transcripts that were filed with the court and which the court ruled would be available for public access.[22] Gibney has argued that the testimony became part of the presumptively public record, albeit in the form of transcripts. He believes that he therefore should be able to access the same testimony in the alternative form of video, which the parties have readily available. Gibney has offered to cover the expenses of a professional third-party service to edit the video and make the

---

*Beecham Corp. v. Synthon Pharm., Ltd.*, 210 F.R.D. 163, 165 (M.D. N.C. 2002) (parties seeking release from protective order to use deposition transcript in other litigation). The *Felling* decision quoted a decision by the United States Court of Appeals for the Seventh Circuit for the proposition that "[m]ost cases endorse a presumption of public access to discovery materials," *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (Posner, J.). To my eye, the *Citizens First* decision addressed the right to access discovery materials *filed with the court*. *See id.*

[22] *See P'r Invs. L.P. v. Theranos, Inc.*, 2017 WL 2303954 (Del. Ch. May 25, 2017).

necessary redactions so that he only receives the portions that have been filed with the court.

In my view, Gibney cannot access the video. Court of Chancery Rule 32(e) states: "Except as otherwise directed by the Court, a party offering deposition testimony pursuant to this rule may offer it in stenographic or nonstenographic form, but, if in nonstenographic form the party shall also provide the Court with a transcript of the portions so offered."[23] The rule requires the filing of a transcript. A party can choose whether or not to file video.

Because the rule contemplates that filing video is optional, I do not believe that the filing of a transcript brings any unfiled video within the ambit of the public's right of access. The transcript version of the testimony and the video version of the testimony are conceptually distinct. If a party submits video, as in *Poindexter* and *Trump Old Post Office*, then the video becomes part of the public record and subject to the public's right of access. If a party chooses only to submit the transcript, then only the transcript becomes part of the presumptively public record. Unless a party also files the video, the video corresponding to the filed portion of the transcript does not become part of the presumptively public record.

Here, the parties only filed excerpts from the deposition transcripts. They did not file the corresponding video. Gibney therefore does not have a right to access the unfiled

---

[23] Ct. Ch. R. 32(e).

8

video corresponding to the 200 pages of deposition transcripts. Those materials did not become part of the presumptively public record.

Gibney's request for access to unfiled discovery material is DENIED.